DECISION AND JOURNAL ENTRY
{¶ 1} Appellant Lake Ridge Holdings, Ltd. appeals from the Lorain County Court of Common Pleas, which granted summary judgment to appellee Bank One, N.A., and correspondingly denied summary judgment to Lake Ridge. We affirm.
 I. {¶ 2} In May 1985, Lake Ridge was seeking capital to finance the construction of a nursing home in North Ridgeville, Ohio. Towards that same objective, the City of North Ridgeville agreed to issue municipal bonds to finance a construction loan. These were 30-year bonds, set to expire on June 1, 2016. The U.S. Department of Housing and Urban Development (HUD) insured the bond issue, and Bank One was designated as the trustee. Accordingly, Lake Ridge signed a mortgage note with U.S. Mortgage Company, Inc. for $2,348,100 at 11 percent annual interest, obtained the capital, constructed the nursing home, and began to make the installment payments. A portion of each payment paid down the note while the rest was passed on to the bondholders as interest on their investment. Lake Ridge had also signed a "Mortgage Loan Prepayment Agreement" with Bank One, dated May 7, 1985, which may be more appropriately titled a no-prepayment
agreement, because the principal provision states:
"1. Notwithstanding anything in the Mortgage Note to the contrary (including specifically any provisions regarding prepayment with or without penalty), [Lake Ridge] waives its privilege to prepay the Mortgage Note at any time while any of the Bonds are outstanding."
Although the no-prepayment agreement document contains an additional signature line for HUD approval, this line is unsigned on the only existing photocopy.
 {¶ 3} For the next 17 years, Lake Ridge submitted monthly loan payments to Bank One under the terms of the note, and Bank One distributed interest payments to the bondholders. Then, on August 13, 2002, Lake Ridge sent a letter to Bank One stating its intent to prepay the remaining mortgage indebtedness due on the note. Bank One responded by explaining that the parties' no-prepayment agreement explicitly prohibited prepayment of the note, that the investors (bondholders) had relied on this provision in purchasing the bonds that financed the note, and because the bonds contained no corresponding call provision, prepayment of the note would cause an inevitable default on the bonds' distributions that would remain due for another 14 years. Therefore, Bank One refused the prepayment.
 {¶ 4} Lake Ridge sued U.S. Mortgage, Bank One and North Ridgeville, seeking a declaratory judgment that the no-prepayment agreement is unenforceable, along with an injunction ordering U.S. Mortgage and Bank One to accept prepayment. Bank One sought summary judgment on several bases, principal among which was its insistence that the no-prepayment agreement is valid and enforceable. Lake Ridge had also filed for summary judgment, essentially agreeing that there were no material questions of fact, but that the law dictated an outcome in their favor.
 {¶ 5} The trial court considered the motions and concluded that the no-prepayment agreement was enforceable. Accordingly, the court granted summary judgment to Bank One and dismissed Lake Ridge's complaint with prejudice, implicitly denying Lake Ridge's motion for summary judgment. Lake Ridge timely appealed, asserting two assignments of error. These two assignments of error have been consolidated to facilitate review.
 II. A. First Assignment of Error
"THE TRIAL COURT ERRED IN GRANTING APPELLEE BANK ONE, N.A.'S (`BANK ONE') MOTION FOR SUMMARY JUDGMENT AND ENTERING JUDGMENT IN FAVOR OF APPELLEES BANK ONE AND CITY OF NORTH RIDGEVILLE (`CITY') AND AGAINST APPELLANT LAKE RIDGE HOLDINGS, LTD. (`LRH')." [sic]
 Second Assignment of Error
"THE TRIAL COURT ERRED IN NOT GRANTING LRH'S MOTION FOR SUMMARY JUDGMENT AND ENTERING JUDGMENT IN FAVOR OF LRH AND AGAINST APPELLEES BANK ONE AND CITY ON COUNTS I, II, III AND IV OF THE COMPLAINT." [sic]
 {¶ 6} Lake Ridge contends that the trial court's grant of summary judgment to Bank One was improper because the no-prepayment agreement is unenforceable on three bases: (1) it conflicts with the plain language of the note; (2) it violates HUD regulations; and (3) it was never signed by HUD, an indispensable party. From this, Lake Ridge argues that the trial court should have deemed the no-prepayment agreement unenforceable, denied summary judgment to Bank One, and instead granted summary judgment to Lake Ridge. We disagree.
 {¶ 7} Appellate courts review the grant or denial of summary judgment de novo, viewing the facts as most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105; Norris v. Ohio Std. Oil Co. (1982),70 Ohio St.2d 1, 2. Summary judgment is proper if there is no genuine dispute of a material fact so that the issue is a matter of law and reasonable minds could come to but one conclusion, that being in favor of the moving party. Civ.R. 56(C); Temple v. WeanUnited, Inc. (1977), 50 Ohio St.2d 317, 327. In the present case, there are no material facts in dispute. The issue is whether the no-prepayment agreement is enforceable, even though it contradicts the terms of the note, appears to conflict with HUD regulations, and was not signed by HUD.
 {¶ 8} Lake Ridge argues that because the note and other financing documents allow for prepayment, they directly contradict the no-prepayment agreement, and therefore, the no-prepayment agreement must be stricken. The note and associated financing documents were signed on May 6, 1985. The no-prepayment agreement was signed on May 7, 1985, and it explicitly acknowledges and supersedes existing contradictory provisions. By signing the no-prepayment agreement, Lake Ridge made a knowing, voluntary and intelligent waiver of any contradictory provisions, and waived any right to prepayment. See State ex rel. Stacy v.Batavia Local School Dist. Bd. of Educ., 97 Ohio St.3d 269,2002-Ohio-6322, at ¶ 22. On its own terms, the waiver is effective and the pre-existing contradictory language is immaterial. This argument lacks merit.
 {¶ 9} Lake Ridge also argues that the agreement had to conform to HUD regulations, which contained a provision stating that "[t]he mortgage shall contain a provision permitting the mortgager to prepay the mortgage." Former 24 C.F.R. 232.37(a)(1) (effective Dec. 22, 1971; amended Jan. 16, 1986). By this reasoning, Lake Ridge contends that the no-prepayment agreement is unenforceable as illegal and in violation of public policy. However, it is axiomatic that the HUD regulations are limited to HUD; there can be no argument that two private parties would otherwise be forbidden from entering a no-prepayment agreement for fear that it would be illegal or that they would violate public policy. Cf. United States v. Luxury Blankets, Inc.
(C.A.6, 1985), 762 F.2d 1012, at *6-7. The ability of private parties to bargain for such rights or restrictions is fundamental to contract law. See Chambers Dev. Co., v. Passaic Cty. Utils.Auth. (C.A.3, 1995), 62 F.3d 582, 589. Thus, the question concerns the extent of HUD's authority to regulate private financing agreements, and in particular, the scope of 24 C.F.R. 232.37 (circa 1985) as it governed "Nursing Homes and Intermediate Care Facilities Mortgage Insurance," under the National Housing Act. Importantly, the cited provision, 24 C.F.R. 232.37(a)(1), falls under "Subpart A — Eligibility Requirements" and when read in this context, merely sets out one of many requirements that a mortgagor must meet to be eligible for HUD's insurance. See generally 24 C.F.R. 232, et seq. While the no-prepayment agreement between Bank One and Lake Ridge may have made Bank One (as the bond issue trustee) ineligible for HUD insurance, we cannot conclude that it is per se unenforceable. That is, based on our reading of the regulation, we cannot conclude that HUD either possessed or exercised such authority as to invalidate a private agreement between Lake Ridge and Bank One. HUD may have had authority to deny insurance of the bond issue, although this would be authority which it apparently has not exercised.
 {¶ 10} Finally, Lake Ridge argues that, as an insurer of the bond issue, HUD was a party to the transaction and Bank One's failure to obtain HUD's signed approval on the no-prepayment agreement necessarily invalidates the agreement. This is incorrect. The agreement was between Bank One and Lake Ridge. The insurance from HUD would inure to the benefit of Bank One (as the bond issue trustee), and certainly Bank One could waive such benefit. The failure of HUD to sign this agreement has no effect on Lake Ridge's rights or responsibilities with regard to the obligations it made to Bank One. This argument is without merit. Lake Ridge's assignments of error are overruled.
 B. Cross-Assignment of Error
"THE TRIAL COURT ERRED IN FAILING TO GRANT THE MOTION OF APPELLEE BANK ONE TO STRIKE INCOMPETENT DOCUMENTARY FILED BY APPELLANT LAKE RIDGE IN THE SUMMARY JUDGMENT PROCEEDINGS." [sic]
 {¶ 11} Although labeled a cross-assignment of error, Bank One has actually attempted to file a cross appeal. See App.R. 3(C)(1). An appellee does not need to file a separate appeal to pursue a cross-appeal. Id. However, that appellee/cross-appellant must still file the notice of cross appeal with the trial court. See id.; Loc.R. 1(B)(3) 2(A). If the cross-appeal has not been filed with the trial court, it has not been perfected and this Court lacks jurisdiction. Bank One did not file the cross-appeal with the trial court. Accordingly, Bank One's attempted cross-appeal is dismissed.
 III. {¶ 12} Lake Ridge's assignments of error are overruled. Bank One's attempted cross-appeal is dismissed. The decision of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Slaby, P.J., Whitmore, J., concur.
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.)